IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| RICHARD D. GILSTRAP, | ) |
| | ) |
| Plaintiff, | ) Case No. 03-1503-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| LAKHI MARITIME, INC., a foreign corporation, | ) |
| | ) |
| Defendant. | ) |

Charles Robinowitz
1211 S. W. Fifth Avenue, Suite 1150
Portland, Oregon 97204-3711

    Attorney for Plaintiff

Dean D. DeChaine
Ky Fullerton
Miller Nash, LLP
3400 U. S. Bancorp Tower
111 S. W. Fifth Avenue
Portland, Oregon 97204-3699

    Attorneys for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Richard Gilstrap alleges that he injured his ankle while working on a vessel owned by defendant. He brings a claim for negligence. Defendant, the shipowner, has filed a motion for summary judgment (#15).

## MOTIONS TO STRIKE

Defendant moves to strike the affidavits of Gilstrap and Captain Mitchell Stoller. Because I do not rely on any of the statements made by Gilstrap or Captain Stoller to which defendant objects, defendant's motions to strike are moot and I will not rule on them.[1]

## FACTUAL BACKGROUND

Gilstrap, along with five other longshoremen, went aboard defendant's vessel, Hyundai Baron, on March 27, 2002, to load and discharge containers. A stevedore superintendent (the employer of the longshoremen) had been aboard prior to the workers to inspect for any hazards and had completed a Safety Compliance Inspection Report, finding no potential hazards. The chief officer joined the superintendent when he conducted his inspection.

Just before the accident occurred, Gilstrap was situated on the catwalk in question (about midship) while his boss and three other longshoremen walked onto a hatch cover adjoining the catwalk. While a container was being brought in for loading, the foreman noticed that one of the cones that would secure the container was not in its proper place. (Containers land on cones, which secure the containers in place to keep the containers from shifting when the ship is at sea.) He told Gilstrap to move the cone, which was located about four feet from the ladder to the main

---

[1] I note that defendant has raised a question about Captain Stoller's expertise with regard to container ships. I grant defendant leave to renew his objection to Captain Stoller's qualifications prior to trial.

Page 2 - OPINION AND ORDER

deck and about two to three feet aft of the lower railing above the catwalk and grating in question.

Gilstrap moved toward the cone. When Gilstrap stopped on the catwalk and turned towards the cone, which was to his right, the grating on which he was standing slid and it continued to slide off its support structure. The grating fell into a gap of about two feet between the ladder and the end of the support structure. Gilstrap described the incident in his deposition as follows: "Well, I was in motion. When I stopped my motion, I was bending over to reach for that cone. And when I, you know, stopped, you know, to reach for that cone, the grating just kept moving, you know. My momentum, my weight or whatever, caused it to, when I come to a stop, put it in motion." Depo. Gilstrap, Ex. 8 at 8.

The gratings on the lashing decks or catwalks of the Hyundai Baron were designed and manufactured in 1992 to be removable and not to be secured. The grating that moved weighs roughly 50 to 75 pounds. The ship was in excellent condition when the accident occurred in 2002. Gilstrap testified that the vessel "looked like a brand new ship." Depo. Gilstrap, Ex. 8 at 8.

Soon after the accident, the shipowner secured the grating to the understructure.

## DISCUSSION

The Longshore and Harbor Workers' Compensation Act requires a shipowner to exercise reasonable care in maintaining its ship so that an experienced stevedore company may load and unload the cargo safely. 33 U.S.C. § 905(b). Among its responsibilities, a shipowner owes a duty to longshoremen to "turnover" the ship in good condition to them. The Supreme Court has explained this "turnover duty" as follows: A shipowner has an obligation to

exercise ordinary care under the circumstances to turn over the ship and its equipment and appliances in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care to carry on cargo operations with reasonable safety to persons and property.

Howlett v. Birkdale Shipping Co., 512 U.S. 92, 98 (1994) (internal quotations omitted).

In addition, a shipowner must warn the stevedore "of any hazards on the ship or with respect to its equipment" if the hazards "are known to the vessel or should be known to it in the exercise of reasonable care" and "would likely be encountered by the stevedore in the course of his cargo operations, are not known by the stevedore, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." Id. at 99 (internal quotations omitted).

Defendant argues that it did not breach its turnover duty. Defendant asserts that it had owned and operated the vessel without incident for two years prior to the accident, and that the stevedore company and the chief officer, after inspecting the Hyundai Baron, determined that the ship was safe to work that day. Defendant argues that it had no reason to believe that the longshoremen were at risk. Finally, defendant argues, Gilstrap cannot offer evidence demonstrating that an inspection would have disclosed the defect.

Gilstrap responds that the shipowner knew or should have known that the grating was not secured to its supporting structure and that there was no lip at the end of the supporting structure to prevent the grating from sliding off the structure, and that this was an unsafe practice, in violation of the International Safety Management Code. In addition, Gilstrap contends that the gratings had slid previously in this area and the shipowner had to be aware of this based on the worn and scratched paint on the structure. In short, Gilstrap argues there is a factual question as

Page 4 - OPINION AND ORDER

to whether the shipowner should have anticipated the grating could slide.  Gilstrap offers his own testimony and the testimony of Captain Stoller as evidence that defendant should have known the steel grating might move if not secured to the support structure.  In addition, Gilstrap argues there is a factual question as to whether the unsecured grating is something a stevedore would discover on his own in his inspection of the vessel.

Viewing the evidence in the light most favorable to Gilstrap, I believe there are questions of fact that preclude summary judgment.  Gilstrap testified that he has worked since 1988 as a longshoreman and has worked on hundreds of container ships; he has never seen a ship with unsecured gratings.  Similarly, Captain Stoller, a master and pilot and maritime safety consultant for the past 14 years, testified that improperly or unsecured gratings are unsafe and increase the risk of injury to longshoremen, and he testified that he has never seen a ship like the Hyundai Baron that did not secure gratings to catwalks.  Finally, there is a question of fact as to whether the stevedore was to check for unsecured gratings in his safety inspection; the box labeled "Unsafe ladders, gratings and walkways corrected or fenced off" is marked "N/A" on the Safety Compliance Inspection Report.  I cannot conclude at this point that defendant had no reason to know that an unsecured grating might slide off a catwalk.  Accordingly, I deny defendant's motion for summary judgment.

///


///

## CONCLUSION

Based on the foregoing reasons, I deny defendant's motion for summary judgment (#15).

IT IS SO ORDERED.

Dated this <u>    6th    </u> day of May, 2005.

                                      <u>  /s/ Garr M. King            </u>
                                      Garr M. King
                                      United States District Judge